# Oehlschlaeger et al. v. Oehlschlaeger's Ex'r et al.

(Decided June 11, 1937.)

ADRIAN H. TERRELL for appellants.

J. D. MOCQUOT for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming in part and reversing in part.

Mrs. Fredericka Oehlschlaeger, a widow and child-

less, then past 80 years of age, died testate on January 17, 1937. Shortly thereafter her will was probated and appellee the Citizens Savings Bank of Paducah, named in the will as trustee and executor, qualified as executor.

The will carefully, though somewhat inartistically prepared, by clause 1 provided for payment of her funeral expenses and all legal obligations. By clause 2 of the will, and a codicil added on the same day the will was executed (January 7, 1935), testatrix made 45 or more cash bequests to her husband's and her relatives, and several charitable and religious institutions. These specifically designated bequests aggregated approximately $23,000. In the same clause testatrix made specific bequests of personal property, such as furniture, pictures, jewelry, and wearing apparel, describing each article and naming the legatees. In pleading it is alleged that this part of clause 2 has been fully administered.

By clause 3 of the will testatrix bequeathed $500 to the Citizens Savings Bank as "trustee," the income thereof to be used in the maintenance of the family vault, providing that the excess of income from this fund if such should result, should go to some worthy charity in the city of Paducah.

Clause 4 of the will reads:

"All the rest and residue of my estate I hereby will and bequeath unto the Citizen's Savings Bank of Paducah, Ky. as [Trustee] or its successors, with full power and authority to invest and handle in its discretion, as follows 70% for the use and benefit of George Oehlschlaeger, John Oehlschlaeger, Heirs of Wm. Oehlschlaeger deceased, Jake Oehlschlaeger, Fredericka Arnold, Tillie Evitts, Henry Oehlschlaeger, children of Jake Oehlschlaeger, deceased, and 25% to my heirs who reside in Germany and are mentioned by name in the cash bequests and 5% to the Evangelical-Reformed Church Synod of St. Louis, Mo."

Clause 5 of the will (italics ours) reads:

"Whereas a lease was executed by me to the Paducah Realty Company for the business house No. 315 Broadway, Paducah, Ky. and said lease provides an option that said property may be purchased by said Paducah Realty Co. [15 years after

the execution of said lease] or before such date for $40,000. It is my will that the trust herein created, shall *continue until the 15 years referred too in said lease have expired,* unless said property is sold before that time, *then said* [trust] *if Paducah Realty Company have not bought said property under its lease* option. *Then* my trustee if deemed best for my estate, *may* sell said property [subject] to the *50 year term of said lease,* and my trustee also *shall* sell if deemed best any other real estate owned by me and not heretofore disposed of, and after *all has been sold, then* the trusteeship shall terminate, and any proceeds of any property from the sale of the property 315 Broadway, together with the proceeds of any other real or personal property not heretofore sold or distributed by my [trustee] shall be distributed in the same ratio as is provided for and to the same beneficiaries as shown in preceding paragraph [4] with proviso that if any of the beneficiaries named persons be not living, and the children, if any of such be dead, distribution be per stirpes and not per capita.''

Clause 6 is as follows:

''The net income from rents or other sources that will come into the hands of my trustee shall once each year be distributed in the manner provided for the distribution of corpus of the trust fund in the preceding paragraph [4] but before *any* division is made the several bequests shall first be paid in full.''

In clause 8 testatrix authorized her executor or trustee, or their successors, either at public or private sale, and on such terms and conditions and at such time or times as they may in their discretion deem best, ''and in the interest of my estate, to grant, bargain, sell or lease and dispose of my lands, tenements, or property real or personal, whereof I may be seized at the time of my death, and upon such sale thereof to execute, acknowledge and deliver all necessary and proper deeds or instruments of conveyance in law, for the vesting in the purchaser or purchasers the fee simple title thereto.''

By a suit filed under the declaratory judgment act (section 639a-1 et seq. of the Civil Code of Practice), by the *executor,* the court was asked to declare the rights

of the parties under the will, the parties plaintiff being the executor and those 38 or more relatives of both testatrix and her deceased husband, and the 6 charitable and religious associations named in the second clause of the will to whom and to which cash bequests had been made. The parties defendant were those persons and the religious institution to whom and to which the residue was bequeathed under clause 4.

The court directed that George Oehlschlaeger sue on behalf of the first class, and that John Oehlschlaeger, Sr., defend for the other class. They thus appeared, suing and defending also in their own proper persons.

It was alleged in the petition that at the time of the death of testatrix she owned approximately $8,000 in value of stocks and bonds, a house and lot on South Fourth street of the value of about $500, another lot on South Third street of the approximate value of $8,000. At this point it is asserted that the personal property is insufficient to pay in full the cash bequests and, further, that the same, with the proceeds from the sale of the first two lots above mentioned, would still be inadequate to pay the cash bequests, costs of administration, payment of debts, and to provide for the $500 trust set up in clause 3 of the will.

It is further pleaded that testatrix was the owner of lot No. 315 Broadway in Paducah, the same mentioned in clause 5 of the will. It is said with respect of this lot that it is now rented to a good and solvent tenant at a satisfactory rental. The lease provided for a 50-year term, with option to the lessee to purchase the property at any time within 15 years of the lease date at the fixed price of $40,000. The date of the lease is not shown, but it is said that it has 40 years to run. This would, as we gather it, extend to the lessee 5 years more in which to exercise the option to purchase. The lessee had not, at the time of suit, expressed any purpose to, or given notice that it would, exercise its right of option. This property plaintiffs say is valuable and may be sold at a price commensurate with its fair value.

Allegations are that it is impossible to make a settlement of the estate without selling some of the real estate, a sale being necessary for the purpose of paying the items above mentioned, and that the executor is being called upon by legatees to make settlement. Executor says that it was given no power by the will to en-

cumber the estate, or to borrow money on the unencumbered portion thereof for the purpose of settling the estate under the provisions of the will.

After alleging that such a controversy exists as to entitle all parties to a declaration, the court was called upon to determine the rights of parties. The court was asked to determine:

"Whether the plaintiff, executor of the will of said decedent should offer said small pieces of real estate for sale at public auction, and if same shall not bring a sufficient amount with the personal estate on hand to pay said cash bequests, if it shall then offer for sale the leased premises, or if it shall offer said leased premises first for the purpose of settling the estate."

It is further said that "the interests of the parties are in controversy as to whether or not the said real estate of decedent shall be sold for the purpose of satisfying said cash bequests, or if said cash bequests shall be paid alone out of the personal property after payment of debts and costs of administration and taxes."

The defendants filed general demurrer to the petition, which was overruled. They excepted to the ruling and declined to plead further, and the court directed the action submitted for trial and judgment.

Upon submission on the pleadings and exhibits filed, the court found and adjudged that testatrix had made various bequests amounting to approximately $23,000, that the personal property of testatrix was approximately $8,000, and that the costs of administration and debts of decedent, together with the cash bequests in money exceed the total of the personal estate. It was further found that testatrix owned certain real estate at the time of her death of the value of $8,000, and "a certain storehouse of the approximate value of $20,000, all of which real estate is available for the purpose of paying the bequests of said decedent in money, and which is susceptible of being sold for said purpose, and it further appears that all of said real estate, excluding the said storehouse, if sold for full value, will yet be insufficient to pay off and discharge all of said bequests in money."

It was decreed that the executor "offer for sale the said storehouse, No. 315 Broadway * * *. at private

sale and accept bids therefor as in the judgment of the executor may be acceptable, and may be of the reasonable market value of said real estate." It was further provided that, if the executor was unable to procure any offers for the purchase of real estate, then the same should be offered at public sale, "after a complete description * * * to be hereafter filed in this action." Further, if the storehouse be not sold for an amount sufficient to pay bequests, costs, taxes and debts, "then the balance of said real estate shall be offered for sale to be set out by a further judgment of this court." To this decree defendant John Oehschlaeger, for and on behalf of himself and those for whom he was permitted to defend, objected and excepted, prayed and was granted an appeal.

The problem confronting us is with relation to the court's decreeing the sale of the Broadway storehouse. In the first place the trustee was not empowered to sell this particular property, unless it be under the terms of clause 8 of the will, and we are clearly of the opinion, from a reading of clauses 8 and 5 in connection with the entire will, that it was not the intention of testatrix that either the executor or trustee had the power to sell same except in accord with clause 5. As indicated above, the numerous cash bequests were set out in clause 2 of the will. The first paragraph of that clause reads:

"After paying my funeral expenses and any legal obligations due by me, it is my will, and I hereby make the following bequests, which amounts shall be paid to the persons hereafter named, and in accord with future provisions herein, to-wit: [Then follow bequests.]"

Counsel suggests that the phrase "and in accord" etc. beclouds the meaning to be given clause 2. We do not think it does so, though on the other hand the language does not throw any light on the subject. It offers no key to the proper solution. The only effect of the language is to perhaps cause the court to scrutinize the document more closely, in order to determine the intent and purpose of the testator. The foregoing states the rule which we follow in the construction of wills of not clearly expressed import. The rule is well known to the craft, and we need not cite cases, of which there are a great many, laying out the rule. When we look to the entire will for guidance we cannot escape the conclusion

that the testatrix intended to and did create certain trusts. She was particular in creating two fiduciaries, since she provided in clause 9 of the will that the savings bank should be permitted to qualify as executor, the bond to be $5,000, and then as trustee, the bond to be fixed at $25,000, "the surety upon the bonds to be corporate and the premium to be paid out of my estate."

Again in clause 6 of the will she provided that once each year the income or rents "that will come into the hands of *my trustee* shall be distributed in the manner provided for the distribution of corpus of the *trust fund* in paragraph 4, but before *any* division is made the several bequests shall first be paid."

However, we hardly need to resort to consideration of any portions of the will other than section 5, which specifically deals with the handling of the Broadway storehouse. She recited that it was under lease with an option to the lessee to purchase the property within 15 years of the date of lease at a fixed price. Testatrix no doubt had high regard for the contract she had entered into, giving her tenant the right to purchase on the terms mentioned. Whether this be true or not, she explicitly provided, "It is my will that the trust herein created shall continue until the 15 years refered too in said lease have expired." It is true she added, "unless said property is sold before that time, *then* said [trust] if Paducah Realty Company have not bought said property under said lease option." This sentence is not so complete as to be clearly understandable, but there can be little, or in fact no doubt but that testatrix intended to say, and by what was said, intended to mean that the trust was to continue for 15 years, unless the Paducah Realty Company exercised within that time its option to purchase at the fixed price. There is a disconnection at this point in the document. There is a period after the words "lease option" in the sentence above quoted, and a new sentence begins *"Then* my *trustee* if deemed best for my estate may sell said property [subject] to the 50 year term of said lease." Not subject to the "option," but subject to the 50-year term of lease.

There can be no doubt but that the word "then," as used twice in the quoted part of clause 5, relates to the cessation of the trust which she intended should terminate upon the exercise of the option given to the lessee,

or the 15 years had expired without closing the option. In other words, the clause should be construed to read:

> "It is my will that the trust herein created by Clause 4 of my will shall continue until the 15 years referred to in said lease shall have expired, unless at any time within the 15 years the Paducah Realty Company has exercised its option to purchase the property under its lease. *Then* (if the 15 years' option be expired) or the lessee has not theretofore exercised its purchase option my trustee may sell the property (subject) to the 50 year term of lease."

So much of the remainder of clause 5 of the will as provides for the sale of any other real estate, does not involve the property not covered by the lease with the option attached. It is said in that part that, after all the property has been sold, the trusteeship shall terminate, and the proceeds from sales of all real estate not heretofore disposed of shall be distributed as per clause 4 of the will. We take it that by this provision the trustee was given the power to sell the real estate other than 315 Broadway "at any time it deemed best," and that the trust should terminate, if in the meantime, within the 15 years, the lessee of 315 Broadway had purchased under the option, or the option had expired by its terms. There is nothing contained in this or any other clause of the will which would prevent the representatives from paying the cash bequests from the proceeds of the sale of the real estate. This seems to have been the intent and purpose of testatrix as gathered by a reading of the whole will.

While clause 8 of the will is broad in its terms we cannot conclude that such provisions authorized the sale of 315 Broadway, except in compliance with clause 5 of the will. To fail to give it such effect would be to overlook the plain provisions of clauses 4 and 5, and other parts of the will. When the two (or three) clauses are read together, it is apparent that the latter clause (8) was chiefly intended to give the personal representatives full power to execute deeds, conveying a fee-simple title to the purchaser. The words "on such terms and conditions, and at such time or times as they deem best, and in the interest of my estate, sell, lease, etc." do not have the effect of removing the limitation with regard to 315 Broadway. Under this power the representatives

may sell real estate, other than the leased storehouse, at any time. They may likewise sell the leased property at any time the lessees choose to exercise the option within the fixed period, or at any time after the expiration of the option period, subject to the unexpired portion of the lease.

For the reasons stated, the judgment below is reversed as to so much thereof as decrees the sale of the leased property, in the manner provided, with directions to set aside that part of the judgment. In other respects it is affirmed.